**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Theresa Watson, et al., | No. CV-14-08228-PCT-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| County of Yavapai, | |
| Defendant. | |

Plaintiffs Theresa and Thomas Watson sued Theresa Watson's former employer, defendant Yavapai County ("the County"), alleging various injuries under the Family Medical Leave Act and the Americans with Disabilities Act. On June 30, 2016, this Court granted summary judgment on all counts in favor of the County. *Watson v. Yavapai County*, No. CV-14-08228-PCT-NVW, 2016 WL 3548765, at *1 (D. Ariz. June 30, 2016). Now before the Court is the County's Motion for Attorneys' Fees and Non-Taxable Costs (Doc. 66), the response (Doc. 67), and the reply (Doc. 69).

**I.   FACTUAL BACKGROUND**

The summary judgment order in this case (Doc. 63) states all the underlying facts. While familiarity with that order is assumed here, the following material facts are reiterated for ease of reference.

**A. Pre-Litigation**

In 2004, four years after beginning work at the Yavapai County Assessor's Office,

Theresa Watson ("Watson") injured her back and neck in a car accident. Pain has plagued her on and off ever since. From 2005 through 2013, she received periodic physician recommendations that she work less and take stretch breaks at varying intervals in order to manage her condition. Watson accordingly submitted to the County a number of workplace accommodation requests during this time seeking, among other things, adjustments to her break intervals and permission to work from home several days per week. The County granted all her requests.

In February of 2013, Watson's supervisor, Yavapai County Assessor Pam Pearsall, formally disciplined Watson for deliberately skipping a professional workshop she had requested to attend. That was not her first work-related scrape. Since at least 2009, Pearsall received numerous complaints about Watson's negative comments made to coworkers. A month after receiving formal discipline, however, Watson began taking Family Medical Leave Act ("FMLA") leave due to increased back pain. Upon returning to work from her first stint away, she submitted a fourteen-paragraph letter to the County's human resources department accusing Pearsall of pervasive workplace hostility toward her. Buried among the mostly conclusory, ad hominem attacks was a single accusation that Pearsall had threatened to demote her because of her disability accommodations under the Americans with Disabilities Act ("ADA"). Pearsall responded by scheduling daily meetings with Watson to provide direction and to adjust her accommodations as necessary.

For the next two months, Pearsall met with Watson regularly and tweaked her accommodation several times in response to recommendations from Watson's doctor. One day late in April, however, Watson and Pearsall hit an impasse over permissible bathroom break intervals, to which Watson responded by interrogating her coworkers about their bathroom use, submitting a complaint letter to Pearsall, and refusing to participate in further daily meetings. The next day Watson received a "Final Written Warning" admonishing her for all of these things, as well as for making personal phone calls during work. At a subsequent performance evaluation, Pearsall described Watson as

"often unpleasant when dealing with others," prone to submitting "accusatory" notes to her supervisors, "spread[ing] misunderstood events to coworkers thus creating negative work environments all around her," "not interact[ing] in a professional and courteous manner at all times," and "not readily accept[ing] responsibility for her inappropriate behavior." (Doc. 48-2 at 55-56.) Watson received a verbal warning a few days later for similar behavior, including not engaging in conversation during her daily accommodation meetings and using office printers for personal use.

Unsatisfied with the County's break schedule accommodations (to which she had previously assented), Watson wrote a flurry of complaint letters over the course of the next month filled with accusations of malice. Among other examples, she cited Pearsall's failure to give her full and unfettered discretion over her break schedule. By the middle of May, the County Assessor's Office initiated proceedings to terminate Watson by giving her an official notice with a statement of facts, citing that she was insubordinate, displayed a negative attitude, made unwarranted demands, and failed to appropriately respond to reasonable directives. Watson was given several days' notice to attend a pre-action meeting but insisted she could not attend because of her husband's chemotherapy treatment. She then asked for FMLA or paid leave on the date of the meeting, which was denied. She was terminated from her position.

Watson appealed her suspension and termination to the Yavapai County Employees' Merit System Commission, which, after a full hearing, determined that the actions taken against her were "not arbitrary or capricious." (Doc. 48-3 at 30-31.) After being denied unemployment benefits, too, Watson appealed to the Arizona Department of Economic Security, which upheld the denial on grounds that she was fired for "misconduct." (Doc. 48-3 at 33-40.) Watson subsequently filed this action against the County.

**B. Litigation**

Watson filed her complaint on November 25, 2014, alleging interference and retaliation under the FMLA, and discrimination and retaliation under the ADA. (Doc. 1.)

1 For ADA discrimination, she asserted that the County "fail[ed] to provide her with a reasonable accommodation, fail[ed] to engage in the interactive process, and terminated her due to her disabilities and complaints." (Doc. 1, ¶ 102.) The County denied all allegations of wrongdoing and made an offer of judgment in the amount of $50. (Doc. 65 at 6.) Watson filed an amended complaint on April 10, 2015, with essentially the same allegations. (Doc. 26.) Extensive discovery ensued. This Court granted summary judgment in favor of the County in June 2016. The County now moves for attorneys' fees against Watson.

## II. LEGAL STANDARDS

The ADA provides:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205. While either plaintiffs or defendants may qualify as prevailing parties, fee awards to defendants should be reserved for "exceptional circumstances," lest they have "a chilling effect on the filing of ADA lawsuits by plaintiffs." *Peters v. Winco Foods, Inc.*, 320 F. Supp. 2d 1035, 1037 (E.D. Cal. 2004), *aff'd*, 151 F. App'x 549 (9th Cir. 2005). ADA defendants may accordingly receive attorneys' fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). While *Christiansburg* sets out the standards for awarding fees under Title VII, the same standards apply for fee awards under the ADA. *See Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1154 (9th Cir. 1997).

The reported cases generate confusion over the legal standard for awarding fees against plaintiffs. On the one hand, *Christiansburg* permits defendant fee awards in cases that are either "frivolous, unreasonable, or without foundation." *Christiansburg*, 434

U.S. at 421. On the other hand, courts often use these three terms as synonyms when analyzing ADA cases. *See, e.g.*, *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1558 n.15 (11th Cir. 1995) (stating policy considerations underlying *Christiansburg* "make it inevitable that the legal standards for the three . . . criteria should be substantially similar, if not identical"); *Goldstein v. Costco Wholesale Corp.*, 337 F. Supp. 2d 771, 779 (E.D. Va. 2004) (citing *Walker* and noting three *Christiansburg* criteria are "similar, if not identical"); *Schutts v. Bentley Nevada Corp.*, 966 F. Supp. 1549, 1556 (D. Nev. 1997) ("An action is frivolous, and therefore subject to fee-shifting against a losing plaintiff . . . if it lacks an arguable basis in law or in fact."); *Quint v. A.E. Staley Mfg. Co.*, 245 F. Supp. 2d 162, 174-75 (D. Me. 2003), *aff'd*, 84 F. App'x 101 (1st Cir. 2003) ("Factors relevant to finding frivolity include whether the legal issues raised were of first impression, whether existing precedent supports or forecloses a legal theory, and whether a plaintiff has failed to prove some prima facie element of her claim.").

These cases and many others unhelpfully collapse or conflate the three markers the *Christiansburg* Court identified. What's more, many courts misleadingly turn their rulings only on whether the plaintiff litigated the claim in subjective bad faith. *See Murphy v. Board of Educ. of Rochester City School Dist.*, 420 F. Supp. 2d 131 (W.D.N.Y. 2006) (awarding fees to defendant where plaintiff deliberately inflated charges with ad hominem attacks and offered contradictory explanations of his own actions in deposition); *Schutts*, 966 F. Supp. at 1556 (awarding fees to defendant where plaintiff alleged disability discrimination despite controlling case law holding that his felony conviction provided adequate independent grounds for his termination); *Seawright v. Charter Furniture Rental, Inc.*, 39 F. Supp. 2d 795 (N.D. Tex. 1999) (granting attorneys' fees where ADA plaintiff deliberately hid from employer his association with AIDS victim, then alleged employer fired him for associating with AIDS victim without any personal knowledge that his employer was aware of this). However, *Christiansburg* specifically held that a showing of bad faith, while sufficient, is not necessary to award fees to a defendant. *Christiansburg*, 434 U.S. at 421-22 (holding that courts may award

fees to prevailing defendants even in actions "not brought in subjective bad faith"). *See also Schutts*, 966 F. Supp. at 1556; *Peters*, 320 F. Supp. 2d at 1037; *Quint*, 245 F. Supp. 2d at 175. *Cf. Saman v. Robbins*, 173 F.3d 1150, 1157-58 (9th Cir. 1999) (reversing district court's denial of defendant fee award under § 1988, governed by *Christiansburg* standard, where plaintiff's action was merely "groundless").

Additional confusion arises because, as some courts have observed, the third branch of the *Christiansburg* standard—"without foundation"—has no technical or other precise meaning. That third branch must be glossed to pull it closer to its neighbors "frivolous" and "unreasonable." Otherwise, the words in isolation could encompass any failed case. *Accord Ecogen, LLC v. Town of Italy*, 461 F. Supp. 2d 100, 104 (W.D.N.Y. 2006) (observing that while complaint may have been "without merit," "[v]irtually every dismissal under Rule 12(b)(6) implies that the complaint was meritless 'when filed.'"). The Ninth Circuit has cautioned district courts against "'engag[ing] in *post hoc* reasoning,' awarding fees simply 'because a plaintiff did not ultimately prevail.'" *Kohler v. Bed Bath & Beyond of California, LLC*, 780 F.3d 1260, 1266 (9th Cir. 2015) (quoting *EEOC v. Bruno's Restaurant*, 13 F.3d 285, 290 (9th Cir. 1993)).

While "without foundation" is unhelpfully overbroad by itself, "frivolous" and "unreasonable" offer more precise direction. Both are terms of art commonly employed in the law. "Frivolous" means "[l]acking a legal basis or legal merit; not serious; not reasonably purposeful." Black's Law Dictionary 692 (8th ed. 1999). "Unreasonable" means "[n]ot guided by reason; irrational or capricious." *Id.* at 1574. Courts should therefore ask whether the action was irrational, capricious, not guided by reason, not serious, or not reasonably purposeful.

A plaintiff may still be liable for attorneys' fees in an action that initially passes this bar "if he continues to litigate after it becomes clear that the action lacks factual substance." *Peters*, 320 F. Supp. 2d at 1037. This might be triggered by, for example, "the receipt of evidence in the course of discovery establishing a complete defense, or a development in the controlling law that foreclosed the claim." *Lamboy-Ortiz v. Ortiz-*

- 6 -

*Velez*, 630 F.3d 228, 242 (1st Cir. 2010). *See, e.g.*, *Schutts*, 966 F. Supp. at 1556-57 (granting attorneys' fees where defendant employer fired plaintiff for committing a felony and controlling circuit ruled six weeks before plaintiff filed suit that employers may fire disabled employees for unlawful conduct even if related to disability).

In the end, a balance must be struck between competing considerations: chilling legitimate actions on the one hand and indulging in unfounded accusations on the other. *See Blue v. United States Dep't of Army*, 914 F.2d 525, 535 (4th Cir. 1990) (noting the need to balance these considerations in the Title VII context).

### III. ANALYSIS

#### A. The Facts of This Case Warrant Attorneys' Fees.

There are ultimately good reasons to award the County attorneys' fees. Nevertheless, some of the County's arguments are unpersuasive. The County points to this Court's finding, repeated throughout the summary judgment order, that Watson presented "no evidence" to support her claims and urges "it is clear that Plaintiff's clams were frivolous and never should have been brought." (Doc. 65 at 6.) The County also argues that Watson should have backed off her complaint after the County filed its answer accompanied by a $50 offer of judgment, because "[t]his was a clear signal to Plaintiffs that the County had carefully evaluated the facts and law and concluded that Plaintiffs' claim of discrimination and retaliation were without merit." (*Id.*) Finally, the County points to Watson's continued pursuit of her claims through fruitless settlement negotiations, even after depositions of the County's witnesses. (*Id.* at 7.) These three arguments are not persuasive.

While a frivolous case will always lack evidence to support it, the absence of evidence at the end does not necessarily make a case frivolous. Sometimes insufficiently pled cases fail on motion to dismiss while still not falling to the level of frivolousness. *See, e.g.*, *Ecogen*, 461 F. Supp. 2d at 103-04 (denying defendant's motion for attorneys' fees despite Rule 12(b)(6) dismissal where policy contested in plaintiff's lawsuit "could be considered to have some 'shortcomings'"). Moreover, discovery sometimes turns up

nothing even when pursued reasonably, i.e., according to a sufficiently plausible legal and factual theory. By the County's logic, every case resolved either on a motion to dismiss or on summary judgment following discovery that turns up nothing would be frivolous in hindsight. This is the kind of "*post hoc* reasoning" a court may not indulge. *See Kohler*, 780 F.3d at 1266. Many cases take this form, and it would cheapen the meaning of "frivolous" to label them all as such. Courts regularly decline to do so. *See, e.g.*, *Davis v. Baltimore Hebrew Congregation*, 985 F. Supp. 2d 701, 719 (D. Md. 2013) (granting summary judgment for defendants but denying them attorneys' fees, reasoning that "this Court cannot conclude in hindsight that the claims were so devoid of foundation that to bring suit at all was frivolous"); *Palmer v. Chelsea Financing Partnership, LP*, 423 F. Supp. 2d 1092, 1093-94 (E.D. Cal. 2006) (denying attorneys' fees for defendant despite prevailing on unopposed motion to dismiss, reasoning that defendant contested not the merit of the claim but the plaintiff's failure to dismiss it sooner upon learning a prior consent decree protected the defendant from suit).

Neither does Watson's perseverance in the face of a low settlement offer on its own warrant an assessment of attorneys' fees against her. Standing one's ground is not equivalent to frivolousness, unreasonableness, or an action lacking foundation, though it may be relevant to whether the litigation could have been avoided and other discretionary factors. If this were dispositive on its own, plaintiffs would be penalized for pursuing even meritorious lawsuits whenever the defendant makes a lowball offer for any reason, be it an honest valuation of the case or a mere bluff. That cannot be correct.

Likewise, the County is not entitled to recover all its attorneys' fees just because Watson continued litigating the case after finding nothing in discovery. Refusing to settle and continuing to litigate after discovery turns up nothing may render an action unreasonable from that point forward. But it would be a fallacy to look backward and conclude the whole thing was necessarily frivolous from the start. *See Kohler*, 780 F.3d at 1266.

However, there is independently persuasive reason to find Watson's action was

frivolous, unreasonable, and without foundation from the beginning. First and foremost, Watson alleged that her employer, among other things, failed to provide a reasonable accommodation and failed to engage in the good-faith interactive process as required by the ADA after she requested disability accommodations. (Doc. 26, ¶ 102.) The record reveals that Watson brought these claims despite knowing full well that County officials met with her numerous times, duly considered her physician's recommendations, repeatedly adjusted her accommodation to her satisfaction, and continued to make adjustments. For years the County had accommodated every request, sometimes suggesting accommodations Watson had not even asked for.

Watson did not need discovery to learn any of this—she had personal knowledge of it going into the lawsuit because she herself was present for the interactive process and requested or approved the accommodations. Perhaps she believed—irrationally—that the County actually denied her reasonable accommodations, or that they did not engage with her in good faith. Even if she held such beliefs, they were objectively unreasonable in light of her own knowledge of essentially all the primary facts necessary to support such allegations. That is enough to satisfy the *Christiansburg* standard.

Watson also brought claims of retaliation under both the ADA and FMLA, as well as a claim of interference with her right to take FMLA leave. At the time of her termination, the County did inform Watson of its reasons for firing her. Namely, the County told her she was terminated for being insubordinate, displaying a negative attitude, making unwarranted demands, and failing to appropriately respond to reasonable directives. Watson has not disputed that those reasons are legitimate and non-discriminatory. An employee is of course not required to take everything her employer says at face value prior to litigation. But an ADA lawsuit must have some basis beyond shot-in-the-dark speculation. Watson insists her termination was retaliation for, among other things, her extensive letter to the Human Resources Department into which, buried at the end of numerous ad hominem attacks, she inserted a single bare assertion that her difficulties constituted failure to accommodate. By then, however, she had already been

1  disciplined, and her insubordination and animosity toward her supervisor were well on
2  display. Assuming Watson truly believed she was retaliated against for protected
3  activity, such a belief is simply not reasonable and was likely colored by her own feelings
4  of animosity. Personal grudges are no license to drag law-abiding employers to court,
5  however therapeutic it might be. The County granted her FMLA leave on all occasions
6  except the one day scheduled for her discharge meeting. She was never disciplined for
7  taking leave. And by the time of her scheduled discharge meeting, the County had
8  already begun termination proceedings against her and had informed her accordingly.

9  Watson received repeated written notice of her deficient job performance prior to
10 being fired. She received numerous reprimands for missing work functions, questioning
11 co-workers about the length of their bathroom breaks, spending work time penning
12 lengthy diatribes, refusing to talk during meetings with her supervisor, and more. She
13 knew she received these reprimands at the litigation's outset. This is not a case where a
14 plaintiff began with a plausible theory only to have her claim dismissed after discovery
15 turned up insufficient evidence. Watson received disability accommodations for nine
16 years, received numerous documented reprimands, and knew what conduct of hers
17 triggered them, whether or not she believed the reprimands were warranted. Then upon
18 being fired, she alleged that she was terminated because she asserted her rights under the
19 ADA and FMLA. An employer is not immune from future discrimination claims simply
20 by virtue of having provided accommodations in the past. But such a history has strong
21 inferential force that the employer did not engage in disability discrimination. Watson
22 brought this suit as a naked allegation, lacking an iota of even circumstantial evidence to
23 make it plausible.

24 Watson's theory that she was actually fired for seeking disability accommodations
25 despite a cascade of reprimands, or as retaliation for protected complaints, was both
26 "unreasonable" and "frivolous," placing it squarely within the *Christiansburg* standard
27 regardless of whether it was brought in subjective bad faith.

28 Fee awards against plaintiffs will be rare and few cases will require close inquiry.

In most failed cases, the minimum substantiality of the allegations will be obvious. But this motion easily gets past that filter. As discussed above and in the summary judgment order, Watson's assertions lacked any objective basis from their beginning as a summary accusation far into her insubordination, discipline, corrections for workplace disruption, contumacious written attacks on her supervisor, and refusal of directions. And that was after nine years of the County's perfect compliance with her ADA and FMLA requests. A fee award is warranted for objective unreasonableness and lack of foundation, without need to inquire further into bad faith.[1]

### B. It Is a Proper Exercise of the Court's Discretion to Award Fees.

That does not end the analysis, however. Even where the *Christiansburg* criteria are met, it is within a court's discretion to grant or deny attorneys' fees to a defendant. *See, e.g.*, *Adkins v. Briggs & Stratton Corp.*, 159 F.3d 306, 307-08 (7th Cir. 1998) ("In exercising its discretion [under section 12205], the court is free to weigh equitable considerations (including the employee's ability to pay) and to award a nominal fee—or even no fee—if the court, for acceptable reasons, deems it appropriate."); *Bercovitch v. Baldwin Sch., Inc.*, 191 F.3d 8, 12 (1st Cir. 1999) ("Even had the [ADA] lawsuit been groundless when brought or continued, the district court still retains discretion to deny or reduce fee requests after considering all the nuances of a particular case.").

Watson does not contend she lacks the ability to pay a fee award, so there has been no occasion to test such an assertion. But even if she had made and proven such a contention, it would not change this Court's analysis. The ADA exists to protect the disabled, not to give disgruntled employees the power to extort their employers with

---

[1] Watson's action may have been in bad faith as well. In some cases bad faith may be shown from direct evidence of intent, such as threats to harm an employer or supervisor with expense or embarrassment of litigation. But in most cases, bad faith must be proved circumstantially. There are indications of both in this case. Watson's prolonged display of contempt, contumaciousness, and attacks on her supervisor, unrelated to any protected activity, strongly suggest a personal motive. Weak or non-existent foundation for litigation suggests there may very well have been other true motives for the litigation. But in the end, it is not necessary to decide whether there was or was not bad faith, as the litigation was objectively frivolous, unreasonable, and without foundation, and fees may be awarded on that basis alone.

- 11 -

groundless litigation. Bringing ADA claims that are frivolous, unreasonable, or without foundation debases the ADA's protections for those it is designed to serve. While the Court takes financial hardship very seriously, a lack of resources is not a license to abuse the ADA. Even an award beyond a plaintiff's ready ability to pay can serve justice by motivating a plaintiff to reveal all assets, without more costly litigation, to induce the prevailing defendant to settle for what the plaintiff can pay. To deny fees here would be a poor exercise of discretion, as it would both excuse Watson's misuse of the ADA and deny the County whatever compensation could be collected.

Watson likewise does not dispute the reasonableness of the amount of fees claimed. All of the defense fees in this case were inextricably intertwined with both the ADA and FMLA charges. Or perhaps more exactly, there was one sprawling narrative that touched here on ADA and there on FMLA but could not be explored and responded to except by exploring and responding to all of it. To compensate the County adequately, all its reasonable fees must be awarded.

The County's attorneys incurred the following fees:

- Georgia Staton: 229.60 hours at $225 per hour
- Eileen Dennis GilBride: 27.60 hours at $200 per hour
- Gordon Lewis: 142.30 hours at $200 per hour
- Justin M. Ackerman: 11.70 hours at $160 per hour

(Doc. 65 at 17-18.) The paralegals working on their case also put in a total of 212.4 hours of work at a rate of $90 per hour. (Doc. 65 at 18.) In total, the County seeks $84,899.50 in attorneys' fees, $19,116.00 in paralegal fees, and $2,154.43 in related non-taxable costs. (Doc. 65 at 12.) The hours claimed are reasonable in light of the extensive discovery Watson introduced into this case. The hourly rates are reasonable and so is the fee as a whole.

This case shows the wisdom of the *Christiansburg* standard allowing for defendants' fee awards based on either subjective bad faith, or on objective grounds such as frivolity or unreasonableness. The sheer cost of groundless litigation raises the specter

of extortion. To a major extent that risk is intrinsic to our largely one-way fee shifting regime in employment cases. But the *Christiansburg* test sets an objective baseline below which plaintiffs cannot go and still play the expense-of-litigation card unilaterally against a defendant. Watson went below that baseline. If that floor is not enforced here, it would be hard to find a case in which it would.

IT IS THEREFORE ORDERED that the County's Motion for Attorneys' Fees and Non-Taxable Costs (Doc. 66) is granted in the amount of $106,169.93.

IT IS FURTHER ORDERED that the Clerk of the Court enter judgment in favor of Defendant County of Yavapai against Plaintiffs Theresa Watson and Thomas Watson, jointly and severally, in the amount of $106,169.93 plus interest at the rate of .98% per annum from the date of judgment until paid.

Dated: March 7, 2017.

Neil V. Wake
Senior United States District Judge